**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. _______________**

HNA LH OD, LLC,

Plaintiff,

v.

LOCAL HOUSE INTERNATIONAL, INC.,
LH 350 OCEAN MANAGER, LLC, and
BRYAN DUNN,

Defendants.
_____________________________________/

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF,**
**DAMAGES, AND DECLARATORY RELIEF**

Plaintiff HNA LH OD, LLC, sues Local House International, Inc., LH 350 Ocean Manager, LLC, and Bryan Dunn, alleging claims of false advertising, unfair competition, tortious interference with business relationships, and declaratory relief, as described more fully below.

**NATURE OF THE ACTION**

1. This is an action for federal unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); violation of the common law of unfair competition, common law tortious interference with business relationships; and declaratory relief pursuant to 28 U.S.C. § 2201.

**PARTIES**

2. Plaintiff HNA LH OD, LLC ("HNA") is a Delaware limited liability company with its principal place of business in Miami Beach, Florida.

3. Upon information and belief, Defendant Local House International Inc. ("Local House") is a Delaware corporation with its principal place of business in New York, New York.

4. Upon information and belief, Defendant LH 350 Ocean Manager, LLC ("LH 350 Ocean Manager", and collectively with "Local House", "Life House") is an affiliate of Local House, which along with Local House and other Local House affiliates does business under the brand "Life House."

5. Upon information and belief, LH 350 Ocean Manager is Delaware limited liability company with its principal place of business in New York, New York.

6. Upon information and belief, Bryan Dunn ("Dunn") is an individual residing in New York, New York.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338 as certain claims in this Complaint arise under the Lanham Act, 15 U.S.C. §1051, *et seq*. and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8. This Court has supplemental subject matter jurisdiction over the state law claims contained herein pursuant to 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over each Defendant because each has substantial, continuous, and systematic contracts with this State.

10. Local House sells, and advertises for sale, hotel services in this State and judicial district on the Internet and physical hotel locations. Local House is also subject to the jurisdiction of this Court because it committed tortious acts within this district.

11. Local House has conducted, engaged in, and carried on a business in this state.

12. LH 350 Ocean Manager sells, and advertises for sale, hotel services in this State and judicial district on the Internet. LH 350 Ocean Manager is also subject to the jurisdiction of this Court because it committed tortious acts within this district.

13. LH 350 Ocean Manager has conducted, engaged in, and carried on a business in this state.

14. Dunn is subject to the jurisdiction of this Court because he committed tortious acts within this district.

15. Venue is appropriate in this district under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred here and because Defendants are subject to personal jurisdiction in this state.

## GENERAL ALLEGATIONS

### 350 Ocean Drive Hotel and Life House

16. Upon information and belief, Life House and affiliates of Life House are in the business of operating hotels.

17. Upon information and belief, Life House currently operates hotels under the Life House brand and also operates other non-branded hotels.

18. Upon information and belief, Life House and its affiliates do not own any hotels and have not owned any hotels in the past.

19. In August 2019, HNA purchased the 81-room hotel located at 350 Ocean Drive, Miami Beach, Florida, 33139 (the "Hotel").

20. The Hotel was formerly known as the "The Lord Balfour Hotel."

21. On August 12, 2019, LH 350 Ocean Manager entered a Hotel Management Agreement with HNA (the "Management Agreement").

22. Pursuant to the Management Agreement, LH 350 Ocean Manager operated the Hotel until September 2020.

23. On or about August 12, 2019, HNA entered into a Loan Agreement in the original principal amount of $23,400,000 with VMC Lender LLC as the Lender (the "Senior Loan").

24. On or about August 12, 2019, HNA LH OD MZ, LLC ("Mezz Borrower") entered into a Mezzanine Loan Agreement in the original principal amount of $10,300,000 with Moto Capital Group Master Fund Ltd. ("Moto") as the Lender and Garrett J. Solomon and Ian Rickwood as the Guarantors (the "Mezzanine Loan").

25. As of August 12, 2019, Mezz Borrower was the sole member of HNA.

26. Mezz Borrower borrowed the money under the Mezzanine Loan Agreement to acquire the hotel, and make certain renovations and improvements to the Hotel.

27. As part of the Mezzanine Loan Agreement, Mezz Borrower was required to provide to Moto that certain Mezzanine Consent of Manager dated August 12, 2019, signed by LH 350 Ocean Manager (the "Mezzanine Consent").

28. Mezz Borrower, and the guarantors of the Mezzanine Loan, Garrett J. Solomon and Ian Rickwood, coordinated the procurement of the Mezzanine Consent from Manager to be delivered to Moto.

29. Mezz Borrower defaulted under the Mezzanine Loan Agreement and Moto sued to enforce its security interest in the Pledged Collateral by virtue of a UCC foreclosure sale, which resulted in ownership of the Mezz Borrower's interests in HNA being transferred to Moto.

30. On or about September 15, 2020 and September 30, 2020, Moto directed HNA to terminate the Hotel Management Agreement, which it was entitled to do under the Mezzanine Loan Documents because of the default.

31. Moto also terminated the Hotel Management Agreement on September 23, 2020 pursuant to its rights under Section 3 of the Mezzanine Consent.

32. Mezz Borrower's default under the Mezzanine Loan Agreement constituted an event of default under the Senior Loan as well.

33. On or about October 29, 2020, VMC Lender LLC also terminated the Hotel Management Agreement pursuant to its rights under that certain Assignment and Subordination of Management Agreement dated as of August 12, 2019.

34. After the UCC foreclosure sale, Moto assigned its interest in HNA to a designee, MCG LB Blocker, Inc., on October 30, 2020.

35. HNA continues to own the Hotel as of the date of this Complaint.

36. As described above, beginning in September 2020, the Management Agreement between LH 350 Ocean Manager and HNA was terminated (the "Termination")

37. Since the Termination, Life House has not operated the Hotel and has not any rights to operate the Hotel.

38. Life House does not own and has never owned the Hotel.

39. On September 22, 2020, Life House representatives were escorted out of the Hotel property and have only re-entered the property since that date, upon permission from HNA, to retrieve their Life House branded items.

40. The Hotel is not currently open and has not been open or accepting reservations from consumers since 2019.

41. Since the August 2019 purchase by HNA, the Hotel has not operated or accepted reservations from consumers under any name other the "The Lord Balfour Hotel."

42. The Hotel has never accepted reservations from consumers, booked reservations for consumers, or provided accommodations to customers under the name "Life House, Ocean Drive."

**HNA Seeks a New Operator of the Hotel and Life House Interferes**

43. Following the termination of LH 350 Ocean Manager as operator of the Hotel, HNA and its affiliates have sought a new operator for the Hotel that could finish the renovation of the Hotel, begin accepting reservations from consumers, and re-open and operate the Hotel.

44. Since October 2020, HNA has been in contact and negotiations with several potential hotel operators for the Hotel ("Potential Operators").

45. On or about October 30, 2020, LH 350 Ocean Manager and several related entities filed suit against HNA in Case No. 655719/20, pending in the Commercial Division of the Supreme Court of the State of New York in the County of New York (the "New York Litigation") relating to the termination of the Hotel Management Agreement.

46. On or about September 9, 2020, HNA entered into an agreement with The Avington Group to serve as a financial advisor and run the request for proposal (RFP) process to solicit proposals for a management company for the Hotel, and HNA agreed to pay The Avington Group a monthly fee and a success fee.

47. On November 11, 2020, counsel for LH 350 Ocean Manager and LH 350 Ocean Developer, LLC sent a letter to The Avington Group, stating that they were aware that The Avington Group was representing HNA in connection with a request for proposals for the right to operate and manage the Hotel. The letter enclosed the complaint from the New York Litigation and claimed certain rights in intellectual property. A copy of the November 11, 2020 letter is attached as Exhibit A (the "Avington Letter").

48. After receiving the Avington Letter, The Avington Group put the RFP process on hold for fourteen (14) days while it evaluated the situation.

49. HNA incurred attorneys' fees in dealing with attorneys for The Avington Group as a result of the Avington Letter.

50. Further, the Avington Letter delayed the potential reopening of the Hotel by at least 14 days because The Avington Group paused the process of soliciting Potential Operators. Meanwhile, HNA was paying The Avington Group's monthly fees, and incurring fees to maintain the Hotel property.

51. The Avington Group resumed soliciting Potential Operators.

52. One of those Potential Operators, Evolution Hospitality ("Evolution"), had been in negotiations with HNA, which had by the beginning of January 2021 had progressed to the stage of signing a letter of intent and exchanging contract terms.

53. On January 20, 2021, Evolution signed a letter of intent to manage and operate the Hotel.

54. HNA incurred legal fees in negotiating and drafting contract terms with Evolution.

55. On or about February 10, 2021, Dunn, who is the "Head of Growth at Life House"[1], called Kathleen Hollis, Senior Vice President of Business Development, at Evolution.

56. Dunn told Hollis that Life House was suing HNA, that it believed it was still rightfully entitled to the Hotel Management Agreement, and that if Evolution entered into a contract with HNA, it would sue Evolution as well.

57. Dunn called Hollis with the intent to prevent Evolution from contracting with HNA, interfering with weeks of negotiations between HNA and Evolution.

---

[1] Per his LinkedIn profile.

58. On February 15, 2021, Life House also sent a letter to Aimbridge Hospitality, Evolution's parent company, threatening to sue for violating Life House's intellectual property rights and for violating Kathleen Hollis's non-solicitation and non-compete agreement, a copy of which is attached as Exhibit B (the "Aimbridge Letter").

59. As a result of Defendants' various contacts, Evolution informed HNA on February 17, 2021 that it was no longer interested in managing or operating the Hotel.

60. HNA then had to start its search for a management company over again, having spent weeks negotiating with Evolution, spent money on attorneys' fees preparing and negotiating the contract, and attempting to convince Evolution to manage and operate the Hotel.

61. When HNA was negotiating with Evolution, and when Evolution signed the letter of intent to manage and operate the hotel, the target opening date for the Hotel was April 1, 2021.

62. As a result of Evolution declining to manage the Hotel, HNA had to restart the process of obtaining a new manager, causing HNA to incur further costs to maintain the Hotel while not receiving any revenues.

63. After reopening the search for a Potential Operator, HNA has chosen an operator and negotiated and signed (on March 9, 2021) a hotel management agreement for the Hotel. The current target opening date is May 15, 2021.

64. From the Termination until the date of this Complaint (throughout the process of HNA searching and negotiating with Potential Operators), Life House has continued to contact HNA about Life House's interest in managing and operating the Hotel under a new management agreement.

65. From the Termination until the date of this Complaint, HNA has denied all offers by Life House that included Life House as manager and operator of the Hotel.

66. Unless Life House is enjoined from contacting parties with whom HNA is negotiating and contracting with to manage and operate the Hotel, HNA will be irreparably harmed in that it will not be able to operate the Hotel.

**Life House's Interference by False Advertising and Unfair Competition**

67. Since at least 2019, Life House has listed the Hotel on its domain, www.lifehousehotels.com (the "Life House Website").

68. Upon information and belief, from at least 2020 until late February 2021, Life House listed the Hotel under the "Our Hotels" section of the Life House Website and stated "Coming Soon" (the "Coming Soon Listing").

69. Any listing of the Hotel on Life House's Website as "Our Hotel" and "Coming Soon" following the Termination was false, misleading, and likely to cause confusion or mistake to the consuming public and Potential Operators of the Hotel because Life House had no affiliation or connection with the Hotel.

70. Upon information and belief, following the Termination, consumers who viewed Life House's Coming Soon Listing would still mistakenly believe that Life House was affiliated with or connected to the Hotel, when this was not the case.

71. Following the Termination, Potential Operators who viewed the Coming Soon Listing would mistakenly believe that Life House was affiliated with the Hotel, when this was not the case.

72. Upon information and belief, Life House deliberately posted its Coming Soon Listing after the Termination, or in the alternative, deliberately did not take down the Coming Soon Listing after the Termination, in order to deceive and confuse the consuming public and Potential Operators, because Life House was attempting to negotiate a new management contract with the

Hotel and believed its false and misleading association with the Hotel would provide leverage in such negotiations.

73. Upon information and belief, the false and misleading Coming Soon Listing caused harm to HNA because the consuming public mistakenly believed that Life House would be operating the Hotel "Soon" and that booking at the Hotel operated by Life House was available or would be available; however, bookings would never be available at the Hotel operated by Life House, thus, creating a false and negative impression in the consuming public about the Hotel, which would carry over to when the Hotel actually re-opens, causing a loss of revenue and goodwill.

74. Upon information and belief, the false and misleading Coming Soon Listing caused harm to HNA, because Potential Operators falsely and mistakenly believed that Life House was still operating the Hotel, thus, preventing or interfering with HNA's efforts to acquire a new operator and re-open the hotel.

75. The inability to re-open the hotel due a lack of an operator was and is a major detriment to HNA because of the loss of revenue and goodwill associated with an open, going-concern hotel.

76. As described above, the Coming Soon Listing was false, misleading, and likely to cause confusion for the duration of time the Coming Soon Listing was active after the Termination.

77. In late February 2021, Life House changed the listing for the Hotel under its "Our Hotels" section of its website to "Designed By."

78. Upon information and belief, Life House changed the listing for the Hotel on the Life House Website because counsel for HNA provided notice to counsel for Life House that the Coming Soon Listing was false and misleading.

79. HNA incurred costs and legal fees in discovering and correcting the false and misleading Coming Soon Listing.

80. Upon information and belief, following the Termination, Life House placed and/or maintained listings for the Hotel on multiple third party websites under the name "Life House, Ocean Drive" (the "Third Party Listings").

81. Any listing, including the Third Party Listings, that advertised bookings at the Hotel or promoted or advertised the Hotel in commerce under the name the "Life House, Ocean Drive" following the Termination was false, misleading, and likely to cause confusion or mistake to the consuming public and Potential Operators of the Hotel.

82. Upon information and belief, following the Termination, consumers who viewed the Third Party Listings would still mistakenly believe that Life House was affiliated with the Hotel or they had the ability to make bookings at the "Life House, Ocean Drive", when this was not the case.

83. Upon information and belief, following the Termination, Potential Operators who viewed the Third Party Listings of the Hotel would still mistakenly believe that Life House was affiliated with the Hotel, when this was not the case.

84. Upon information and belief, Life House placed the Third Party Listings after the Termination and deliberately did not remove the listings, in order to deceive and confuse the consuming public and Potential Operators and to create false association with the Hotel, because Life House was attempting to negotiate a new management contract with HNA for the Hotel and believed its false and misleading association with the Hotel would provide leverage in such negotiations due to the diversion of revenue to HNA, costs to HNA, loss of goodwill to HNA, and false association with Life House formed in the minds of consuming public.

85. In the alternative, upon information and belief, Life House placed Third Party Listings before the Termination, and deliberately did not remove the listings following the Termination in order to deceive and confuse the consuming public and Potential Operators, because Life House was attempting to negotiate a new management contract with HNA for the Hotel and believed its false and misleading association with the hotel would provide leverage in such negotiations due to the diversion of revenue to HNA, costs to HNA, loss of goodwill to HNA, and false association with Life House formed in the minds of consuming public.

86. On February 24, 2021, counsel for HNA sent letters to six third party websites (Expedia, Travelocity, Hotels.com, Agoda, Kayak, and TripAdvisor), each of which had a Third Party Listing, indicating that the listings were false and misleading because Life House has not been affiliated or connected with the Hotel since the Termination.

87. As of the date of the Complaint, TripAdvisor, Hotels.com, and Agoda have removed the listing for "Life House, Ocean Drive" from their websites.

88. HNA has incurred costs and attorneys' fees in discovering and correcting the Third Party Listings placed and used by Life House.

89. As described in an August 2017 Federal Trade Commission Report to Congress regarding the "Online Hotel Booking Market"[2], the type of false and misleading information in the Third Party Listings has a material effect on consumer purchasing decisions:

> False or misleading material information about hotels can harm both consumers and competition. Such information harms consumers because it affects or is likely to affect their choices among hotels. False or misleading material information also harms hotels that lose customers to deceitful competitors as well as undermines consumer confidence in the market for hotel rooms.

---

[2] The Report is available at https://www.ftc.gov/reports/online-hotel-booking-market-federal-trade-commission-report-congress-recommended-enforcement and is attached as Exhibit C.

90. On its website[3], the American Hotel and Lodging Association indicates the following statistics: 1) some 500 online hotel bookings are transacted every minute in the United States; 2) some 55 million online hotel bookings are affected by fraudulent websites and call centers posing as hotel websites; and 3) there are $3.9 billion in bad bookings per year.

91. HNA continues to incur costs and attorneys' fees in its efforts to discover and correct false and misleading Third Party Listings placed and used by Life House.

92. As of the date of this Complaint, at least three Third Party Listings placed and used by Life House are active and have not been taken down:

- Expedia[4]
- Travelocity[5]
- Kayak[6]

93. The Expedia Listing clearly indicates that the Life House, Ocean Drive is located at the site of Hotel (350 Ocean Drive, Miami Beach, FL), which is not the case because Life House has no affiliation or connection with the Hotel since the Termination.

---

[3] https://www.ahla.com/issues/online-hotel-booking-scams (*last accessed* March 16, 2021) (attached as Exhibit D)

[4] https://www.expedia.com/Miami-Hotels-Room-Mate-Lord-Balfour.h868695.Hotel-Information (*last accessed* March 16, 2021) (the "Expedia Listing", attached as Exhibit E).

[5] https://www.travelocity.com/Miami-Hotels-Room-Mate-Lord-Balfour.h868695.Hotel-Information (*last accessed* March 16, 2021) (the "Travelocity Listing", attached as Exhibit F).

[6] https://www.kayak.com/Miami-Beachf-Hotels-Room-Mate-Lord-Balfour.34873.ksp (*last accessed* March 16, 2021) (the "Kayak Listing", attached as Exhibit G).




94. The Expedia Listing shows pictures of different rooms from the "Life House Hotel, Ocean Drive" and allows consumers to "Choose Dates" and "Availability," which is also false and misleading because the Hotel is not open or accepting bookings, and will not be open or accepting bookings in affiliation with Life House.




95. The Expedia Listing creates a false impression of affiliation, authorization, or sponsorship between Life House and HNA's Hotel which does not exist, and has not existed since

the Termination, thus causing a likelihood of confusion in the minds of the consuming public and Potential Operators of the Hotel.

96. Upon information and belief, Life House has not taken any steps to dispel the false impression and confusion caused to the consuming public and Potential Operators by the Expedia Listing.

97. Upon information and belief, at no time prior to the filing of this Complaint has the Expedia Listing changed, thus, the consuming public could easily try to book a room at the "Life House, Ocean Drive" without knowing Life House has no affiliation or connection with the property.

98. Upon information and belief, at no time prior to the filing of the Complaint has the Expedia Listing featured any disclaimer that Life House is not associated or connected with the Hotel or that a room cannot be booked for the future; thus, when the consuming public attempts to book a room through the Expedia Listing and is unsuccessful, a negative impression of the Hotel is created, which is entirely due to the false, misleading, and confusing nature of the Expedia Listing placed and used by Life House.

99. The negative impression of the Hotel felt by consumers due to the Expedia Listing has caused, and will cause, harm to HNA, because, for example, consumers will avoid making bookings in the future at the Hotel or provide negative ratings.

100. The false and misleading Expedia Listing also causes harm to HNA because Potential Operators will falsely and mistakenly believe that Life House is still operating the Hotel, thus preventing or interfering with HNA's efforts to negotiate and contract with a new operator and re-open the Hotel.

101. The inability to re-open the hotel due a lack of an operator is a major detriment to HNA because of the loss of revenue and goodwill associated with an open, going-concern hotel.

102. Each day the false and misleading Expedia Listing is active and not corrected allows for irreparable consumer confusion regarding the affiliation of the Hotel and bookings at the Hotel.

103. As described above, the Expedia Listing is false, misleading, and likely to cause confusion, and has been false, misleading, and likely to cause confusion for the duration of time the listing has been active since the Termination.

104. The Travelocity Listing clearly indicates that the Life House Hotel, Ocean Drive is located at the site of Hotel (350 Ocean Drive, Miami Beach, FL), which is not the case because Life House has no affiliation with the Hotel since the Termination.




105. The Travelocity Listing for the "Life House, Ocean Drive" shows pictures of the Hotel and different rooms and allows consumers to choose "Check In" and "Check Out" dates and

other criteria to “Find Rooms,” which is also false and misleading because the Hotel is not open or accepting bookings, and will not be open or accepting bookings in affiliation with Life House.

106. The Travelocity Listing creates a false impression of affiliation, authorization, or sponsorship between Life House and the HNA’s Hotel which does not exist, and has not existed since the Termination, thus causing a likelihood of confusion in the minds of the consuming public and Potential Operators of the Hotel.

107. Upon information and belief, Life House has not taken any steps to dispel the false impression and confusion caused to the consuming public and Potential Operators by the Travelocity Listing.

108. Upon information and belief, at no time prior to the filing of this Complaint has the Travelocity Listing changed, thus, the consuming public could easily try to book a room at the “Life House, Ocean Drive” without knowing Life House has no affiliation or connection with the property.

109. Upon information and belief, at no time prior to the filing of the Complaint has the Travelocity Listing featured any disclaimer that Life House is not associated or connected with the Hotel or that a room cannot be booked for the future; thus, when the consuming public attempts to book a room through the Travelocity Listing and is unsuccessful, a negative impression of the Hotel is created, which is entirely due to the false, misleading, and confusing nature of the Travelocity Listing placed and used by Life House.

110. The negative impression of the Hotel felt by consumers due to the Travelocity Listing has caused, and will cause, harm to HNA, because, for example, consumers will avoid making bookings in the future at the Hotel or provide negative ratings.

111. The false and misleading Travelocity Listing also causes harm to HNA, because Potential Operators will falsely and mistakenly believe that Life House is still operating the Hotel, thus preventing or interfering with HNA's efforts to negotiate and contract with a new operator and re-open the Hotel.

112. The inability to re-open the Hotel due a lack of an operator is a major detriment to HNA because of the loss of revenue and goodwill associated with an open, going-concern hotel.

113. Each day the false and misleading Travelocity Listing is active and not corrected allows for irreparable consumer confusion regarding the affiliation of the Hotel and bookings at the Hotel.

114. As described above, the Travelocity Listing is false, misleading, and likely to cause confusion, and has been false, misleading, and likely to cause confusion for the duration of time the listing has been active since the Termination.

115. The Kayak Listing clearly indicates that the Life House Hotel, Ocean Drive is located at the site of Hotel (350 Ocean Drive, Miami Beach, FL), which is not the case because Life House has no affiliation with Hotel since the Termination.



116. The Kayak Listing for the "Life House, Ocean Drive" allows consumers to choose "desired dates" and other criteria to "search for room rates", which is also false and misleading because the Hotel is not open or accepting bookings, and will not be open or accepting bookings in affiliation with Life House.

117. The Kayak Listing creates a false impression of affiliation, authorization, or sponsorship between Life House and HNA's Hotel which does not exist, and has not existed since the Termination, thus causing a likelihood of confusion in the minds of the consuming public and Potential Operators of the Hotel.

118. Upon information and belief, Life House has not taken any steps to dispel the false impression and confusion caused to the consuming public and Potential Operators by the Kayak Listing.

119. Upon information and belief, at no time prior to the filing of this Complaint has the Kayak Listing changed, thus, the consuming public could easily try to book a room at the "Life House, Ocean Drive" without knowing Life House has no affiliation or connection with the property.

120. Upon information and belief, at no time prior to the filing of this Complaint has the Kayak Listing featured any disclaimer that Life House is not associated or connected with the Hotel or that a room cannot be booked for the future; thus when the consuming public attempts to book a room through the Kayak Listing and is unsuccessful, a negative impression of the Hotel is created, which is entirely due to the false, misleading, and confusing nature of the Kayak Listing placed and used by Life House.

121. The negative impression of the Hotel felt by consumers due to the Kayak Listing has caused, and will cause, harm to HNA, because, for example, consumers will avoid making bookings in the future at the Hotel or provide negative ratings.

122. The false and misleading Kayak Listing also causes harm to HNA, because Potential Operators will falsely and mistakenly believe that Life House is still operating the Hotel, thus preventing or interfering with HNA's efforts to negotiate and contract with a new operator and re-open the Hotel.

123. The inability to re-open the hotel due a lack of an operator is a major detriment to HNA because of the loss of revenue and goodwill associated with an open, going-concern hotel.

124. Each day the false and misleading Kayak Listing is active and not corrected allows for irreparable consumer confusion regarding the affiliation of the Hotel and bookings at the Hotel.

125. As described above, the Kayak Listing is false, misleading, and likely to cause confusion, and has been false, misleading, and likely to cause confusion for the duration of time the listing has been active since the Termination.

126. Upon information and belief, Life House actively monitors the hotels listed on the Life House Website and the hotels it lists on third party websites.

127. Upon information and belief, Life House's Coming Soon Listing and Third Party Listings which are owned, controlled, or operated by Life House, were placed in interstate commerce and in this judicial district, through the various websites, and were designed to obtain revenue for Life House or divert revenue and good will from HNA, including revenue obtained or diverted from this judicial district.

128. Unless enjoined, consumers and Potential Operators in this state and judicial district will continue to be deceived or confused by the Third Party Listings to the detriment of HNA and the consuming public.

129. Unless enjoined, HNA will continue to incur attorneys' fees and costs in discovering and corrective false and misleading Third Party Listings.

130. Life House's unlawful acts described above have occurred, and are continuing to occur, in interstate commerce and in this judicial district, and were directed to cause, have caused, and are continuing to cause, injury to HNA within this district, and have a direct impact in Florida, where the Hotel is located.

131. The attempted diversion of revenue away for HNA to the benefit of Life House, in the form of a new management contract, has a direct impact on HNA in this judicial district where the Hotel is located.

**Life House's Interference by Threatened Intellectual Property Litigation**

132. Following the Termination, Life House, through counsel, has threatened HNA, and Potential Operators of the Hotel with allegations that include intellectual property claims ("IP Claims").

133. Specifically, in association with its IP Claims, Life House demands that portions of the Hotel, and tangible property within the Hotel, must be removed or returned to Life House before operation of the Hotel

134. Life House's threatened IP Claims are improper and meritless for multiple reasons, including a lack of ownership of any relevant patent rights, trademark rights, trade dress rights, copyright rights, or trade secret rights.

135. Many of the Life House's threatened IP Claims are so vague that a discernible claim cannot be determined.

136. The only ripe IP Claim that can be discerned by HNA is an allegation of trade dress infringement under Lanham Act, specifically 15 U.S.C. § 1125 (a) (the "Trade Dress Allegation").

137. On information and belief, the first instance of the Trade Dress Allegation was first made by Life House, through counsel, on November 11, 2020 in the Avington Letter.

138. On information and belief, the Avington Letter, and the Trade Dress Allegations within it, were sent by Life House to Avington Group in order to interfere with HNA's efforts to negotiate with and retain an operator for the Hotel.

139. On information and belief, Life House asserted the Trade Dress Allegations, and other IP Claims, in the Avington Letter as an attempt to prevent any competitors from operating the Hotel.

140. The Avington Letter states that the Hotel's custom furniture, layout, lighting, paint, and molding "must be removed from the [H]otel."

141. The Avington Letter further states: "If any of this intellectual property remains in use by a replacement manager or operator, then Life House will seek to enforce its rights."

142. As described above, after receiving the Avington Letter, The Avington Group put the RFP process on hold for fourteen (14) days while it evaluated the situation.

143. HNA incurred attorneys' fees in dealing with attorneys for The Avington Group as a result of the Avington Letter.

144. Further, the Avington Letter delayed the potential reopening of the Hotel by at least 14 days because The Avington Group paused the process of soliciting Potential Operators.

Meanwhile, HNA was paying The Avington Group's monthly fees, and incurring fees to maintain the Hotel property.

145. In response to the Avington Letter, counsel for HNA sent a letter on December 28, 2020 to counsel for Life House (the "First Response").

146. The First Response indicated, for multiple reasons, that the IP Claims described in the First Letter were meritless.

147. The First Response also demanded Life House "cease and desist its unlawful and tortious conduct" against HNA and its affiliates.

148. HNA incurred attorneys' fees and costs in responding to the Avington Letter.

149. The next instance of the Trade Dress Allegation was made in a February 13, 2021 letter from counsel for Life House to counsel for HNA (the owner of the Hotel) (the "HNA Letter", Exhibit H).

150. On information and belief, the HNA Letter, and the Trade Dress Allegations within it, were sent by Life House in order to interfere with HNA's efforts to negotiate with and retain an operator for the Hotel.

151. On information and belief, Life House asserted the Trade Dress Allegations, and other IP Claims, in the HNA Letter as an attempt to prevent any competitors from operating the Hotel.

152. The HNA Letter describes a "Lanham Act" claim directed to "Enforceable Rights to the Distinctive Design Elements in the Hotel."

153. The HNA Letter defines the so-called "distinctive design features" in sweeping expanse, and to include versions or refinements of the following: bed frames, desks, closets, chairs, bunk beds, mirror assemblies, vanity assemblies, wardrobes, television stands, benches, host

stands, banquettes, sofas, bar stools, armchairs, dumbbell racks, storage shelves, planters, and loungers, artwork in the form of textile patterns, encaustic tile patterns around the pool terrace, and color schemes predominated by earth tones with hues of rust and olive green.

154. The HNA Letter does not assert any of the above items incorporate any Life House registered trademark.

155. The HNA Letter asserts that the so called "distinctive design features are consistent with design used at other Life House Properties and thus signify that this Hotel is part of the Life House brand. Because this design is a 'symbol' by which Life House distinguishes its services from those of its competitors, the design is protected by trade dress."

156. The HNA Letter then threatens: "HNA may not use these design features without Life House's consent and should thus remove them from the Hotel immediately."

157. The HNA Letter further threatens: "If the parties are unable to reach agreement, and if HNA does not remove the custom-designed furniture and the distinctive design features from the Hotel, Life House intends to enforce its intellectual property rights against HNA and any future operator and will seek at a minimum injunctive relief, HNA's and the future operator's profits, treble damages, and attorneys' fees."

158. The next instance of the Trade Dress Allegation was made on February 15, 2021 in the Aimbridge Letter from counsel for Life House to another Potential Operator of the Hotel.

159. On information and belief, the Aimbridge Letter, and the Trade Dress Allegations within it, were sent by Life House to Aimbridge Group in order to interfere with HNA's efforts to negotiate with and retain an operator for the Hotel.

160. On information and belief, Life House asserted the Trade Dress Allegations, and other IP Claims, in the Aimbridge Letter as an attempt to prevent any competitors from operating the Hotel.

161. The Aimbridge Letter provides another different and broad definition of "Life House's protectable trade dress," to include: multi-tonal floral prints, textured fabrics, vintage furniture, representations of the area's social and cultural history – such as old photographs of local landmarks, native botanical arrangements, and paintings by local artists.

162. The Aimbridge Letter threatens: "if these distinctive design features and furniture pieces are not removed from Ocean Drive, Life House reserves the right to pursue its rights under the Lanham Act against "[a]ny person who, on or in connection with any goods or services, uses in commerce Life House's trade dress. 15 U.S.C. § 1125(a)(1). Such an action may reach not only the Owner but also any other party that uses Ocean Drive for commercial purposes. Under the Lanham Act, a plaintiff such as Life House who establishes trade dress infringement may recover a defendant's profits, any damages sustained, the costs of the action, and where warranted, treble damages. 15 U.S.C. § 1117(a)."

163. As described above, HNA had entered into negotiations with Evolution Hospitality, which progressed to the point of signing a letter of intent and preparing draft contracts with a target opening date for the Hotel of April 1, 2021.

164. HNA incurred attorneys' fees in negotiating contract terms with Evolution Hospitality.

165. As a result of the Aimbridge Letter and Defendants' various contacts, Evolution Hospitality informed HNA on February 17, 2021 that it was no longer interested in managing the Hotel.

166. HNA then had to start its search for a management company over again, having spent weeks negotiating with Evolution, and spent money on attorneys' fees preparing and negotiating the contract.

167. Such interference also delayed the opening of the Hotel, which has now been pushed back to May 15, 2021, causing HNA to incur further maintenance and management costs while not receiving any revenues from the Hotel

168. HNA also incurred attorneys' fees and costs in responding to the Aimbridge Letter.

169. On March 1, 2021, counsel for HNA again responded to Life House's IP Claims, including the Trade Dress Allegations (the "Second Response").

170. The Second Response describes, in detail, certain reasons that Life House's IP Claims lack merit, and demands that Life House's interference with and unlawful conduct with HNA's business cease immediately.

171. Following the Termination, Life House has continuously attempted to interfere with the future re-opening and operation of the Hotel.

172. Life House's interference has included the interference with business relationships described above, false and misleading advertising, unfair competition through intentionally confusing listings, and threats of IP Claims, including Trade Dress Allegations against HNA and its business relationships, including Potential Operators.

173. Following the Termination, Life House has also attempted to negotiate a new contract to operate the Hotel. Such attempts have been rejected by HNA.

174. The timing and actions taken by Life House described above, along with the legal threats contained in Avington Letter, HNA Letter, and Aimbridge Letter, all point to the inevitable conclusion that Life House seeks to disrupt and prevent HNA from lawfully contracting with an

operator of its choice, and re-opening and operating the Hotel which includes the items of tangible property, fixtures, and components of the Hotel itself that are owned by HNA, which Life House alleges are its "distinctive" trade dress.

175. HNA denies the meritless allegations contained in the Avington Letter, HNA Letter, and Aimbridge Letter, including the Trade Dress Allegations.

176. The varying, broadly defined items that Life House asserts are protectable trade dress are nothing unique, unusual, or unexpected in a hotel; at best, they are mere refinements of the design and décor one would expect to encounter in a hotel.

177. The varying, broadly defined items that Life House asserts are protectable trade dress also lack any cognizable secondary meaning in the mind of consumer, because, for example, such secondary meaning is impossible in a "bespoke" hotel that has never been opened or operated under the Life House brand.

178. The operation of the Hotel, which includes renovations, furniture, and fixtures purchased or performed between 2019 and 2020 (and the physical layout of any of these), by a party other than Life House, would not infringe a trademark, trade dress or other legal right of Life House, and HNA's activities and conduct leading to and resulting in such operation will not constitute unfair competition or trade dress infringement.

179. The threats and actions described above, including the threatened IP Claims, create a real, concrete and justiciable controversy existing between HNA and Life House concerning HNA's lawful operation of the Hotel, which includes renovations, furniture, and fixtures purchased or performed between 2019 and 2020 (and physical layout of any of these).

180. HNA has retained undersigned counsel to represent it in this civil action and has obligated itself to pay reasonable attorneys' fees therefore, which fees are recoverable against Defendants.

181. All conditions precedent to bringing and maintenance of this action have been performed, were waived, would be futile if attempted, or have otherwise been satisfied or occurred.

**COUNT I**
**Unfair Competition under the Lanham Act, 15 U.S.C. § 1125 (a)(1)(A)**
**(Against Life House)**

182. HNA incorporates paragraphs 1-5, 7-13, 15-44, 67-131, 180-181 as if fully set forth herein.

183. HNA hereby allege federal unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125 (a)(1)(A).

184. Upon information and belief, Life House's use and listing of "Life House, Ocean Drive" on third party websites for booking or promotion in interstate commerce has intentionally caused confusion, caused mistake, and deceived consumers and Potential Operators as to the affiliation, connection, or association of Life House with HNA's Hotel.

185. Life House's use and listing of "Life House, Ocean Drive" on third party websites for booking and promotion is likely to cause mistake, and to deceive as to the affiliation, connection, or association of Life House with HNA's Hotel, and is likely to create the false impression that Life House's services are affiliated, associated with, or are connected with HNA's Hotel, and thereby constitute a false description or representation used in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125 (a)(1)(A).

186. As a direct and proximate result of Life House's actions, HNA has and will suffer damages including the loss of income, loss of profits, and harm to its goodwill.

187. Life House's acts of unfair competition will cause irreparable harm to HNA if this Court does not restrain Life House from further violation of HNA's rights; HNA has no adequate remedy at law for such irreparable harm.

188. Life House's unlawful conduct has and will cause HNA to suffer economic damage and has caused and will continue to cause, unless enjoined by this Court, substantial and irreparable damage and injury to HNA and the public, for which injury HNA has no adequate remedy at law.

189. Upon information and belief, due to Life House's intentional, unauthorized acts of unfair competition, HNA has and will incur actual damages in amounts to be determined by the Court from lost sales and profits, and devoting substantial resources toward safeguarding its impacted consumer and business relationships.

190. Due to the irreparable injury HNA has suffered and is likely to continue to suffer, it is entitled to injunctive relief.

191. Due to HNA's acts of unfair competition, HNA is entitled to recover all available damages, attorneys' fees, and costs.

**COUNT II**
**False Advertising under the Lanham Act, 15 U.S.C. § 1125 (a)(1)(B)**
**(Against Life House)**

192. HNA incorporates paragraphs 1-5, 7-13, 15-44, 67-131, 180-181 as if fully set forth herein.

193. HNA hereby alleges false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125 (a)(1)(B).

194. Life House has made and is making false and/or misleading representations of fact concerning their affiliation with the Hotel and the ability of consumers to make bookings at the

Hotel as operated by Life House through the listing of the "Life House, Ocean Drive" on third party websites.

195. Life House has no affiliation with the Hotel, and has not had any affiliation with the Hotel since the Termination, thus, making the Third Party Listings placed and used by Life House false and misleading.

196. Upon information and belief, Life House has made each of their false and misleading representations of fact with knowledge of their false and/or misleading nature, or willful and reckless disregard for their false and/or misleading nature.

197. Upon information and belief, Life House's false and misleading misrepresentations of fact have deceived and are likely to deceive the consuming public and Potential Operators about the true nature of the operation and affiliation of the Hotel, which has no affiliation or connection with Life House.

198. Life House's false and/or misleading representations of fact are material, in that the representations go to the true nature of who consumers believe operates or is affiliated with the Hotel and how consumers are able to book lodging at the Hotel, both of which affect consumer purchasing decisions and competition – *i.e.*, consumer choices among hotels and/or consumer confidence in the market for hotel rooms.

199. HNA has incurred and continues to incur costs and attorneys' fees to discover and correct the misleading representations of fact by Life House.

200. Upon information and belief, Life House's false and/or misleading misrepresentations have actually deceived and have a tendency to deceive consumers who have relied on or will likely rely on Life House's false and/or misleading representation in attempting to making a booking decision at the Hotel.

201. Upon information and belief, Life House's false and/or misleading misrepresentations have actually deceived and have a tendency to deceive Potential Operators who have relied on or will likely rely on Life House's false and/or misleading representation in deciding whether to negotiate and finalize a management agreement and to operate the Hotel.

202. Life House caused their false and/or misleading representations to enter interstate commerce and this judicial district through websites, including third party websites.

203. Life House's placement and use of the Third Party Listings in interstate commerce, which include their false and misleading representations of fact, are for services – bookings at the Hotel – in this judicial district.

204. Upon information and belief, HNA has been injured by Life House's false advertising through a diversion of business away from HNA due to the false impression created in the consuming public.

205. Upon information and belief, HNA has been injured by Life House's false advertising through a diversion of Potential Operators from operating the Hotel, which has prevented HNA from re-opening the Hotel and generating revenue as a going concern.

206. HNA has also been injured because it has incurred and will continue to incur costs and attorneys' fees to discover and correct Life House's false advertising.

207. As a direct and proximate result of Life House's actions, HNA has suffered and is likely to continue to suffer significant monetary damages and competitive injury, including by diversion of revenue from HNA and loss of goodwill due to the false impression of the Hotel by the consuming public and Potential Operators.

208. Life House's unlawful conduct has and will cause HNA to suffer economic damage and has caused and will continue to cause, unless enjoined by this Court, substantial and irreparable damage and injury to HNA and the public, for which injury HNA has no adequate remedy at law.

209. On information and belief, due to Life House's intentional false and/or misleading advertising, HNA has and will incur actual damages in amounts to be determined by the Court from lost sales and profits, and devoting substantial resources toward safeguarding its impacted consumer and business relationships.

210. Due to the irreparable injury HNA has suffered, and is likely to continue to suffer, including the irreparable false impressions caused in consumers, it is entitled to injunctive relief.

211. Due to HNA's false and/or misleading advertising, HNA is entitled to recover all available damages, attorneys' fees, and costs.

**COUNT III**
**Common Law Unfair Competition**
**(Against Life House)**

212. HNA incorporates paragraphs 1-5, 7-13, 15-44, 67-131, 180-181 as if fully set forth herein.

213. HNA hereby alleges violations of the common law of unfair competition.

214. As a result of their actions, as described above, Life House has wrongfully associated and/or affiliated itself with HNA's Hotel in commerce, in connection with the sale, offering for sale or advertising of their services at the Hotel, and are thereby likely to confuse and deceive members of the purchasing public and Potential Operator as to the sponsorship or affiliation of the operator of HNA's Hotel.

215. Further, through their actions, Life House has made and is continuing to make false and/or misleading statements in commercial advertisements that they knew or should have known

are false and/or misleading.

216. Upon information and belief, Life House's false and/or misleading statements have already influenced, and will continue to influence, purchasing decisions as consumers are deceived by the false and misleading advertisements and a false impression is created about HNA's Hotel.

217. Upon information and belief, Life House's false and/or misleading statements have already influenced, and will continue to influence, the decisions of Potential Operators as they are deceived by the false and/or misleading advertisements and diverted from negotiating a potential management contract, and operating the Hotel.

218. Upon information and belief, Life House engaged in this conduct with the intent to create a false impression with consumers and Potential Operators in order to create leverage against HNA in negotiations for a new management contract for the Hotel.

219. By virtue of its aforementioned acts, Life House is engaging in unfair competition with respect to HNA in violation of HNA's rights under the common law of unfair competition.

220. As a result of Life House's actions, HNA has suffered and will continue to suffer damages including diversion of sales, loss of income, loss of profits, and harm to their goodwill.

221. Life House's acts of unfair competition will cause further irreparable harm to HNA if this Court does not restrain Life House from further violation of HNA's rights.

222. HNA has no adequate remedy at law.

223. HNA is also entitled to the recovery of all available damages, including actual and punitive damages.

**COUNT IV**
**Tortious Interference With Business Relationships**
**(Against Life House and Dunn)**

224. HNA incorporates paragraphs 1-66, 132-181 as if fully set forth herein.

225. This is an action for tortious interference with business relationships.

226. HNA has business relationships with The Avington Group and Evolution.

227. Defendants were aware of the business relationships between HNA, The Avington Group and Evolution.

228. LH 350 Ocean Manager sent the November 11, 2020 letter to The Avington Group with the intent to dissuade The Avington Group from doing business with HNA

229. As a result of the Avington Letter, The Avington Group paused the process of soliciting Potential Operators for the Hotel, causing HNA to incur attorneys' fees and additional management and maintenance costs due to the delay in opening the Hotel.

230. HNA then entered into negotiations with Evolution, which progressed to the point of signing a letter of intent and preparing draft contracts with a target opening date for the Hotel of April 1, 2021.

231. HNA incurred attorneys' fees in negotiating contract terms with Evolution.

232. Dunn contacted Hollis at Evolution with the intent to dissuade Evolution from contracting with HNA.

233. LH 350 Ocean Manager also sent a letter to Aimbridge Hospitality, Evolution's parent company, threatening to sue for violating Life House's intellectual property rights and for violating Kathleen Hollis' non-solicitation and non-compete agreement, with the intent to dissuade Evolution from contracting with HNA. *See* Exhibit B.

234. As a result of Defendants' various contacts, Evolution informed HNA on February 17, 2021 that it was no longer interested in managing the Hotel, thus depriving HNA of the manager of choice to operate the Hotel.

235. HNA then had to start its search for a management company over again, having spent weeks negotiating with Evolution, spent money on attorneys' fees preparing and negotiating the contract.

236. Such interference also delayed the opening of the Hotel, which has now been pushed back to May 15, 2021 after having to negotiate and contract with another operator, causing HNA to incur further maintenance and management costs while not receiving any revenues from the Hotel.

**COUNT V**
**Declaratory Judgment of No Trade Dress Infringement**
**(Against Life House)**

237. HNA incorporates paragraph 1-5, 7-13, 15-66, 132-181 as if fully set forth herein.

238. An actual, concrete and justiciable controversy exists concerning HNA's activities with respect to operation of the Hotel, which includes the use of renovations, furniture, and fixtures purchased or performed between 2019 and 2020.

239. Life House has engaged in conduct that gives reasonable apprehension on the part of HNA that it will face suit for trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), if HNA continues its activities with respect to operation of the Hotel, which includes renovations, furniture, and fixtures purchased or performed between 2019 and 2020.

240. HNA seeks a declaratory judgment that its activities with respect to operation of the Hotel, which includes the use of renovations, furniture, and fixtures purchased or performed between 2019 and 2020, is not likely to cause confusion with Life House's alleged trade dress.

241. HNA seeks a declaratory judgment that its activities with respect to operation of the Hotel, which includes the use of renovations, furniture, and fixtures purchased or performed between 2019 and 2020 does not, and will not, infringe Life House's alleged trade dress.

242. HNA seeks a declaratory judgment that Life House will suffer no damages or loss of goodwill as a result of HNA's activities with respect to operation of the Hotel, which includes the use of renovations, furniture, and fixtures purchased or performed between 2019 and 2020.

243. HNA seeks a declaratory judgment that Life House is not entitled to any injunctive relief or damages under 15 U.S.C. § 1117.

**COUNT VI**
**Declaratory Judgment of No Federal Unfair Competition**
**(Against Life House)**

244. HNA incorporates paragraph 1-5, 7-13, 15-66, 132-181 as if fully set forth herein.

245. An actual, concrete and justiciable controversy exists concerning HNA's activities with respect to operation of the Hotel, which includes the use of renovations, furniture, and fixtures purchased or performed between 2019 and 2020.

246. Life House has engaged in conduct that gives reasonable apprehension on the part of HNA that it will face suit for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), if HNA continues its activities with respect to operation of the Hotel, which includes renovations, furniture, and fixtures purchased or performed between 2019 and 2020.

247. HNA seeks a declaratory judgment that its activities with respect to operation of the Hotel, which includes the use of renovations, furniture, and fixtures purchased or performed between 2019 and 2020 does not, and will not, constitute unfair competition or infringement of Life House's alleged rights under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

248. HNA seeks a declaratory judgment that Life House will suffer no damages or loss of goodwill as a result of HNA's activities with respect to operation of the Hotel, which includes the use of renovations, furniture, and fixtures purchased or performed between 2019 and 2020.

249. HNA Seeks a declaratory judgment that Life House is not entitled to any injunctive relief or damages under 15 U.S.C. § 1117.

**PRAYER FOR RELIEF**

A. That Life House, its officers, agents, servants, employees, licensors, licensees, attorneys, successors, related companies, parent companies, and assigns, and all those in active concert or participation with it, be forthwith preliminarily and thereafter permanently enjoined and restrained from:

i. Using the Life House name or mark in connection with the Hotel, including on third party websites;

ii. Doing any other act or thing likely to induce the mistaken belief that Life House is in any way approved by or affiliated,, connected or associated with the Hotel;

iii. Unfairly competing with HNA in any manner whatsoever;

iv. Causing a likelihood of confusion with respect to the affiliation of the Hotel, or injury to the business reputation of the Hotel and/or HNA;

v. Contacting Potential Operators and other business associates of HNA.

B. That Life House be ordered to compensate HNA for any and all corrective advertising, corrective actions, or other expenses necessary to dispel the confusion and deception caused by Life House's unlawful acts complained of herein.

C. That HNA be awarded monetary relief in an amount to be fixed by the Court, including:

i. All damages sustained by HNA as a result of Defendants' acts of tortious interference, Life House's federal and common law unfair competition, and false advertising, and that such damages be trebled;

ii. Punitive damages, in view of the willful, deliberate and extraordinary nature of Defendants' acts.

D. That, because of the exceptional nature of this case resulting from Life House's deliberate conduct, HNA be awarded by the Court all reasonable attorneys' fees, costs, and disbursements incurred as a result of this action, pursuant to 15 U.S.C. §1117, or as authorized by common law and state law.

E. That the Court declare that HNA's activities with respect to operation of the Hotel, which includes the use of renovations, furniture, and fixtures purchased or performed between 2019 and 2020 does not, and will not, constitute unfair competition or infringement of Life House's alleged rights under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

F. That the Court declare that HNA's activities with respect to operation of the Hotel, which includes the use of renovations, furniture, and fixtures purchased or performed between 2019 and 2020, is not likely to cause confusion with Life House's alleged trade dress.

G. That the Court declare that HNA's activities with respect to operation of the Hotel, which includes the use of renovations, furniture, and fixtures purchased or performed between 2019 and 2020 does not, and will not, infringe Life House's alleged trade dress

H. That the Court declare that Life House has not suffered and will not suffer damages or loss of goodwill as a result of HNA's activities with respect to operation of the Hotel, which includes the use of renovations, furniture, and fixtures purchased or performed between 2019 and 2020.

I. That the Court declare that Life House has not suffered any harm and is not entitled to any injunctive relief or damages under 15 U.S.C. § 1117.

J. That HNA shall have such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

HNA requests a trial by jury on all issues so triable.

Dated: March 16, 2021

Respectfully submitted,

By: */s/ Naomi M. Berry*
Merrick L. Gross
Florida Bar No. 716677
Naomi M. Berry
Florida Bar No. 69916
CARLTON FIELDS, P.A.
700 NW 1st Ave, Ste. 1200
Miami, Florida 33136-4118
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
Email: mgross@carltonfields.com
nberry@carltonfields.com
mcabrera@carltonfields.com

J. Coy Stull
Florida Bar No. 15764
CARLTON FIELDS, P.A.
4221 W. Boy Scout Blvd., Suite 1000
Tampa, Florida 33607-5780
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
Email: jstull@carltonfields.com

*Attorneys for Plaintiff HNA LH OD, LLC*

## VERIFICATION

STATE OF FLORIDA )
) SS:
COUNTY OF MIAMI-DADE )

I hereby verify that the facts contained in the Verified Complaint as set forth above are true and correct based on my personal knowledge and review of the business records of HNA LH OD, LLC, of which I use and rely on regularly in the course and scope of my duties as Manager of HNA LH OD, LLC

By: ______________________
GUILHERME CARDOSO FEDERICO, manager of HNA LH OD, LLC

THE FOREGOING was sworn to or affirmed and subscribed before me by means of ☒ physical presence or ☐ online notarization this 16 day of MARCH, 2021, by GUILHERME CARDOSO FEDERICO, manager of HNA LH OD, LLC. He or she ☒ is personally known to me, or ☒ has produced FL DRIVER LICENSE (type of identification) as identification. C632-280-83-094-0

(SEAL) Notary Public State of Florida
Lorena Medeiros
My Commission GG 953705
Expires 02/02/2024

______________________
NOTARY PUBLIC
LORENA FIGUEIREDO DE MEDEIROS