UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21022-BLOOM/Otazo-Reyes

HNA LH OD, LLC,

    Plaintiff,

v.

LOCAL HOUSE INTERNATIONAL, INC.,
LH 350 OCEAN MANAGER, LLC, and
BRYAN DUNN,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants Local House International, Inc., LH 350 Ocean Manager, LLC, and Bryan Dunn's (collectively, "Defendants") Motion to Dismiss and Strike Plaintiff's Complaint with Prejudice. ECF No. [24] ("Motion"). Plaintiff HNA LH OD, LLC ("Plaintiff") filed a Response in Opposition, ECF No. [29] ("Response"), to which Defendants replied, ECF No. [33] ("Reply"). Plaintiff also filed a Notice of Supplemental Authority. ECF No. [36]. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part consistent with this Order.

**I.**     **BACKGROUND**

On March 16, 2021, Plaintiff filed a Verified Complaint for Injunctive Relief, Damages, and Declaratory Relief against all Defendants ("Complaint"). ECF No. [1]. The Complaint asserts six counts: federal unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) ("Count I"); false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) ("Count

II"); violation of the common law of unfair competition ("Count III"); violation of the common law of tortious interference with business relationships ("Count IV"); declaratory relief pursuant to 28 U.S.C. § 2201 that Plaintiff's activities with respect to the operation of the hotel at issue are not likely to cause confusion with Defendants' alleged trade dress and that Defendants will suffer no damages as a result of Plaintiff's activities ("Count V"); and declaratory relief pursuant to 28 U.S.C. § 2201 that Plaintiff's activities with respect to the operation of the hotel do not constitute unfair competition or infringement of Defendants' rights under 15 U.S.C. § 1125(a) ("Count VI"). ECF No. [1].

According to the Complaint, Plaintiff owns the hotel located at 350 Ocean Drive, Miami Beach, Florida, 33139 (the "Hotel"). *Id.* ¶ 19. Defendant Local House International, Inc., ("Local House") is a Delaware corporation with its principal place of business in New York, New York. *Id.* ¶ 3. Defendant LH 350 Ocean Manager, LLC, ("Manager") is an affiliate of Local House. *Id.* ¶ 4. Local House and Manager collectively operate hotels under the Life House brand, and Plaintiff's Complaint refers to both collectively as "Life House." *Id.* Defendant Bryan Dunn ("Dunn") is the Head of Growth at Life House. *Id.* ¶ 55. On August 12, 2019, Plaintiff and Defendant Manager entered a Hotel Management Agreement (the "HMA") to manage the Hotel. *Id.* ¶ 21. Plaintiff and LH 350 Ocean Developer, LLC, entered into a Development Management Agreement (the "DMA") to develop the Hotel. ECF No. [33-2].[1] The DMA incorporated provisions 10 and 11 (other than Sections 10.5, 11.4, 11.5, and 11.6) of the HMA. *Id.* at 26, § 7.2. In pertinent part, the HMA contains the following forum-selection provision:

---

[1] As discussed below, in considering a motion to dismiss, the Court must draw all reasonable inferences and resolve all factual conflicts in favor of Plaintiff, but may also consider facts outside the Complaint to determine whether venue is proper. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004); *MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc.*, 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001).

> 11.10 <u>Applicable Law</u>. This Agreement shall be governed in all respects by the laws of the State of New York. Venue for any action under this Agreement shall be in the City and County of New York.

ECF No. [24-1] at 41-42, § 11.10. Furthermore, the HMA contains provisions for certain rights upon termination of the HMA:

> [Plaintiff] agrees that [Defendants] or an Affiliate of [Defendants] shall continue to own all right, title and interest in, or to, all [Defendants'] Materials (including, for clarity, all [Defendants'] Marks, [Defendants'] proprietary booking technology and all [Defendants'] Intellectual Property but excluding any third party property management or reservation software/systems that are commercially available to [Plaintiff]) and shall have the full, unrestricted right to use all [Defendants'] Materials following the expiration of the Term or any other termination of this Agreement in any manner, for any reason.

*Id.* at 36, § 9.4.

> [Plaintiff] hereby acknowledges that it has no right, title or interest in or to [Defendants'] Materials and covenants (i) not to claim any such interest, . . . (iv) upon termination of this Agreement for any reason, to immediately cease all use of [Defendants'] Materials (or any part thereof) and return to [Defendant] all copies of [Defendants'] Materials which are then in, or thereafter come into, [Plaintiff's] or any Affiliate's possession, including without limitation documents, computer files, computer disks, contracts, agreements, plans, drawings, designs, photographs, books, notes, electronically stored data, and all copies of the foregoing, as well as any other materials or equipment supplied by [Defendant] (whether during the Term of this Agreement or otherwise).

*Id.* at 20, § 3.18.3.

On August 12, 2019, Plaintiff entered into a Loan Agreement with VMC Lender LLC as the lender. ECF No. [1] ¶¶ 23-24. On the same date, Plaintiff's sole member HNA LH OD MZ, LLC ("Mezz Borrower") entered into a Mezzanine Loan Agreement with Moto Capital Group Master Fund Ltd. ("Moto") as the lender. *Id.* ¶ 24. Mezz Borrower subsequently defaulted under the Mezzanine Loan Agreement, which constituted a default under the Loan Agreement as well. *Id.* ¶¶ 29, 32. Mezz Borrower's interests in Plaintiff were transferred to Moto. *Id.* ¶ 29. On September 15, 2020, and September 30, 2020, Moto directed Plaintiff to terminate the HMA. *Id.* ¶ 30. On September 23, 2020, Moto also terminated the HMA. *Id.* ¶ 31. On October 29, 2020,

VMC Lender LLC terminated the HMA as well. *Id.* ¶ 33. Plaintiff subsequently sought other potential operators for the Hotel. *Id.* ¶ 43.

On October 30, 2020, Defendants and several related entities filed suit against Plaintiff in Case No. 655719/20, pending in the Commercial Division of the Supreme Court of the State of New York in the County of New York (the "New York Litigation") relating to the termination of the HMA. *Id.* ¶ 45. Plaintiff alleges that, while the New York Litigation was pending, Defendants listed the Hotel on their website, *id.* ¶ 67, maintained listings for the Hotel on multiple third-party websites, *id.* ¶ 80, and asserted intellectual property claims against Plaintiff and potential operators for the Hotel, *id.* ¶¶ 47, 58.

On March 16, 2021, Plaintiff filed its Complaint. ECF No. [1]. On March 30, 2021, Defendants filed their Motion. ECF No. [24]. Defendants contend that pursuant to a valid forum-selection clause in the HMA, this action should be dismissed for improper venue and *forum non conveniens*. *Id.* at 3-4. Specifically, Defendants argue that the forum-selection clause mandates New York as the venue for all litigation related to the HMA. *Id.* at 3. Defendants also contend, in the alternative, that the Complaint fails to plead an action under the Lanham Act and Defendants' actions are protected under the Noerr-Pennington Doctrine and privileged. *Id.* at 5. Because the Court concludes that dismissal without prejudice is appropriate under *forum non conveniens*, it need not address the other arguments raised by Defendants.

## II.    LEGAL STANDARD

### 1.   Rule 12(b)(3) Motion Pursuant to 28 U.S.C. § 1404(a)

When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of showing that the venue selected is proper. *See Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (explaining that the plaintiff must make "only a prima

4

facie showing of venue"); *see also BP Prods. N. Am., Inc. v. Super Stop 79, Inc.*, 464 F. Supp. 2d 1253, 1256 (S.D. Fla. 2006). "The facts as alleged in the complaint are taken as true, to the extent they are uncontroverted by defendants' affidavits." *Delong Equip. Co.*, 840 F.2d at 845. The court may also consider facts outside the complaint to determine whether venue is proper. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). In examining the record, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Id.*

Generally, venue in federal civil actions is governed by 28 U.S.C. § 1391. "Pursuant to § 1391(b), venue is proper in: (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *TMJ Practice Mgmt. Assocs., Inc. v. Curran*, No. 16-81903-CIV, 2017 WL 3130421, at *3 (S.D. Fla. July 24, 2017). If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

However, if there is a forum-selection provision that requires the dispute to be litigated in a non-federal forum, the United States Supreme Court has determined that a motion to dismiss for *forum non conveniens*, and not a Rule 12(b)(3) motion for improper venue, is the appropriate means to enforce a valid forum-selection clause. *See Atl. Marine Constr. Co. v. United States Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 60 (2013) ("[T]he appropriate way to enforce a

forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*.").

### 2. *Forum Non Conveniens*

Generally, "[t]o obtain dismissal for *forum non conveniens*, 'the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" *GDG Acquisitions, LLC v. Gov't of Belize,* 749 F.3d 1024, 1028 (11th Cir. 2014) (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001)).

In considering a motion to dismiss for *forum non conveniens*, as with a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), courts must accept the facts in a plaintiff's complaint as true, "to the extent they are uncontroverted by the defendants' affidavits." *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam)); *Delong Equip. Co.*, 840 F.2d at 845 (citing *Black v. Acme Markets, Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977)).[2] A court may "consider matters outside the pleadings if presented in proper form by the parties" in ruling on a motion to dismiss for *forum non conveniens*. *MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc.*, 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001); *see also Grp. CG Builders & Contractors v. Cahaba Disaster Recovery, LLC*, 534 F. App'x 826, 829-30 (11th Cir. 2013) (affidavit in support of a motion to dismiss for *forum non conveniens* was properly considered).

---

[2] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

The existence of a valid forum-selection clause, however, requires a district court to adjust its *forum non conveniens* analysis in three aspects. *See Atl. Marine Constr. Co.*, 571 U.S. at 63.[3] "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Accordingly, the analysis must only consider public-interest factors. *Id.* Finally, "[t]he court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." *Id.* at 65-66 (footnote omitted). As such, when presented with a valid forum-selection clause, district courts must apply the Supreme Court's modified *forum non conveniens* analysis — namely, courts must assess (1) whether an adequate alternative forum is available, and (2) whether the public factors weigh in favor of dismissal. *Id.* at 63-65; *GDG Acquisitions, LLC*, 749 F.3d at 1028.

In addition, the Supreme Court has held that the existence of a forum-selection clause is essentially dispositive in the *forum non conveniens* analysis. *See Atl. Marine Constr. Co.*, 571 U.S. at 62; *see also GDG Acquisitions*, 749 F.3d at 1028 ("an enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis). The Supreme Court's determination that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring), stems, in part, from the recognition that these clauses represent the parties' *ab initio* agreement as to the most proper forum. *Id.* at 31; *Atl. Marine Constr. Co.*, 571 U.S. at 62 ("When parties agree to a forum-selection clause, they waive the right to challenge a preselected forum as

---

[3] Although determined in the context of a motion to transfer pursuant to 28 U.S.C. § 1404(a), the Supreme Court expressly noted that these "same standards should apply to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses." *Atl. Marine Constr. Co.*, 571 U.S. at 66 n.8.

inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."); *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 16-17 (1972) ("[W]here it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable.").

Once established, the existence of a valid forum-selection clause governing the claims at issue shifts the burden from the party seeking dismissal to the non-movant to establish that dismissal is improper. *See Atl. Marine Constr. Co.*, 571 U.S. at 63; *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016); *Pappas v. Kerzner Int'l Bah. Ltd.*, 585 F. App'x 962, 967 (11th Cir. 2014). Indeed, the party seeking to avoid the forum-selection clause bears a "heavy burden of proof" that the clause should be set aside. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

### 3. Forum-Selection Clauses

In analyzing the application of a forum-selection clause, courts must determine whether the clause is valid, whether the claim at issue falls within the scope of the clause by looking to the language of the clause itself, and whether the clause is mandatory or permissive. *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012) ("To determine if a claim falls within the scope of a clause, we look to the language of the clause."); *Fla. Polk Cty. v. Prison Health Servs. Inc.*, 170 F.3d 1081, 1083 (11th Cir. 1999) (courts must further determine whether clause is mandatory or permissive).

### III.  DISCUSSION

Defendants argue that the Court should dismiss Plaintiff's Complaint because of the parties' valid forum-selection clause. ECF No. [24] at 10-15. Plaintiff responds that the forum-selection clause does not apply to Plaintiff's claims. ECF No. [29] at 3.

#### A. Applicability of the Forum-Selection Clause

As a preliminary matter, the Court must determine whether all Defendants can invoke the forum-selection clause. Defendant Manager is a party to the HMA, ECF No. [1] ¶ 21, but Defendants Local House and Dunn are not parties to the HMA or DMA, ECF Nos. [24-1], [33-2]. Plaintiff contends that Defendants Local House and Dunn cannot invoke the forum-selection clause as non-parties. ECF No. [29] at 2 n.2. However, in *Gonzalez v. Watermark Realty, Inc.*, the court found that non-parties could invoke a forum-selection clause as long as they are "closely related to the dispute such that it becomes foreseeable that [non-parties] will be bound" by the forum-selection clause. No. 09-60265-CIV, 2010 WL 1299740, at *4 (S.D. Fla. Mar. 30, 2010) (quoting *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998)). Other courts have found that non-signatory defendants can enforce a forum-selection clause against a signatory plaintiff if the non-signatory defendants are corporate affiliates of the defendant signatory. *See United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1055 (N.D. Ill. 2015); *see also Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.,* 364 F.3d 884, 889 (7th Cir. 2004) (finding that a forum-selection clause cannot be "defeated by suing an affiliate or affiliates of the party to the contract in which the clause appears, or employees of the affiliates"). Here, according to the allegations in Plaintiff's Complaint, Defendant Manager is an affiliate of Defendant Local House. ECF No. [1] ¶ 4. Defendants Local House and Manager collectively operate hotels under the Life House brand, and Plaintiff's Complaint refers to both collectively as "Life House." *Id.*

Defendant Dunn is an employee of Life House being sued in his capacity as an employee at Life House. *Id.* ¶ 55. As such, each Defendant is an affiliate and the non-signatories may invoke the forum-selection clause.[4]

### B. Validity of the Forum-Selection Clause

The Court must determine whether the forum-selection clause invoked by Defendants is valid. *Cf. Atl. Marine Constr. Co.*, 571 U.S. at 62 n.5 ("Our analysis presupposes a contractually valid forum-selection clause."). "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (citing *Carnival Cruise Lines, Inc.,* 499 U.S. at 593-95). Plaintiff fails to assert that the forum-selection clause is invalid. *See* ECF No. [29]. Rather, Plaintiff seemingly assents to its validity and argues that Defendants have failed to provide a basis as to *why* the claims are within the scope of the forum selection clause. As such, the Court finds that Plaintiff has failed to satisfy its burden of presenting any "extraordinary circumstances" preventing the clause's application. *Atl. Marine Constr. Co.*, 571 U.S. at 62; *Carnival Cruise Lines, Inc.*, 499 U.S. at 595 ("Indeed, the party seeking to avoid the forum-selection clause bears a 'heavy burden of proof' that the clause should be set aside."). Therefore, the forum-selection clause is valid.

### C. Scope of the Forum-Selection Clause

Next, the Court must determine whether Plaintiff's claims at issue are within the scope of the parties' forum-selection clause. *See generally Emerald Grande, Inc. v. Junkin*, 334 F. App'x 973, 976 (11th Cir. 2009). "Under general contract principles, the plain meaning of a contract's

---

[4] Even if Defendants Local House and Dunn could not invoke the forum-selection clause as non-signatories, they are indispensable parties because the Court cannot accord complete relief among the parties without their presence.

language governs its interpretation." *Slater v. Energy Servs. Grp. Int'l, Inc.*, 643 F.3d 1326, 1330 (11th Cir. 2011) (citing *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1307 & n.11 (11th Cir. 2008)). Thus, "[t]o determine if a forum-selection clause encompasses a particular type of claim, we look to its language." *Stiles*, 637 F. App'x at 559 (citing *Slater*, 634 F.3d at 1330).

Here, the forum-selection clause states, "This Agreement shall be governed in all respects by the laws of the State of New York. Venue for any action under this Agreement shall be in the City and County of New York." ECF No. [24-1] at 41-42, § 11.10. The Court must therefore determine whether Plaintiff's claims constitute "action[s] under" the HMA. *Id.* Courts have determined that forum-selection clauses containing the language "under this Agreement" to include non-contractual claims arising from the contract. *See Blixseth v. Disilvestri*, 11-22459-CIV, 2013 WL 12063940, at *13 (S.D. Fla. Jan. 31, 2013); *Food Mktg. Consultants, Inc. v. Sesame Workshop*, 2010 WL 1571206, at *11 (S.D. Fla. Mar. 26, 2010) (stating "courts should subject claims pled as so-called 'non-contractual' causes of action to vigorous scrutiny to ensure that the intent of the parties in entering into the forum-selection clause is upheld"). "[W]hether a particular phrasing of a forum-selection clause covers a given cause of action requires a case-specific factual determination and depends on the relationship of the claim in question to the contract containing the forum-selection clause." *Food Mktg.*, 2010 WL 1571206, at *11.

Plaintiff first contends that, because its claims are based on conduct that occurred after the termination of the HMA, the claims do not arise from the HMA. ECF No. [29] at 4. In support of its argument, Plaintiff relies on *Hindi v. BirdEye, Inc.*, No. 19-cv-61201, 2019 WL 4091425 (S.D. Fla. Aug. 29, 2019), and a case cited in *Hindi*, namely *Ramos v. PH Homestead, LLC*, 358 F. Supp. 3d 1355 (S.D. Fla. 2019). In *Hindi*, this Court found that the plaintiff's claims were based on conduct that occurred while the agreement was in effect and that the plaintiff's claims, therefore,

11

fell within the scope of agreement's forum-selection clause. However, *Hindi* is inapposite as the conduct giving rise to Plaintiff's Complaint occurred after the HMA was terminated.

In *Ramos*, the plaintiff's Telephone Consumer Protection Act (TCPA) claims were based on conduct that occurred after the termination of an agreement. 358 F. Supp. 3d at 1361. The defendant in *Ramos* sought to compel arbitration pursuant to an agreement's arbitration provisions. *Id*. at 1360. The court in *Ramos* held that the plaintiff's claim was outside the scope of the arbitration provision because the conduct giving rise to the cause of action occurred after the agreement was terminated. *Id.* at 1361 ("Plaintiff's claim 'arises not from the [Agreement] or any breach of it, but from post-agreement conduct that allegedly violates a separate, distinct federal law.'"). However, in *Ramos*, the court relied on the fact that the agreement and the arbitration provision in question did not consider post-termination conduct or potential claims that could arise from the agreement. *Id*. ("neither the Agreement nor the Arbitration Provision contemplates future TCPA claims"). Unlike the agreement in *Ramos*, the HMA explicitly considers post-termination rights of Plaintiff and Defendants. ECF No. [24-1]. Several provisions discuss the post-termination rights over Defendants' "Materials," "Marks," and "Intellectual Property." *Id.* at 20, 36, §§ 3.18.3, 9.4. The HMA states:

> [Plaintiff] agrees that [Defendants] or an Affiliate of [Defendants] shall continue to own all right, title and interest in, or to, all [Defendants'] Materials (including, for clarity, all [Defendants'] Marks, [Defendants'] proprietary booking technology and all [Defendants'] Intellectual Property but excluding any third party property management or reservation software/systems that are commercially available to [Plaintiff]) and shall have the full, unrestricted right to use all [Defendants'] Materials following the expiration of the Term or any other termination of this Agreement in any manner, for any reason.

*Id.* at 36, § 9.4. Also,

> [Plaintiff] hereby acknowledges that it has no right, title or interest in or to [Defendants'] Materials and covenants (i) not to claim any such interest, . . . (iv) upon termination of this Agreement for any reason, to immediately cease all use of [Defendants'] Materials (or any part thereof) and return to [Defendants] all

12

>copies of [Defendants'] Materials which are then in, or thereafter come into, [Plaintiff's] or any Affiliate's possession, including without limitation documents, computer files, computer disks, contracts, agreements, plans, drawings, designs, photographs, books, notes, electronically stored data, and all copies of the foregoing, as well as any other materials or equipment supplied by [Defendants] (whether during the Term of this Agreement or otherwise).

*Id.* at 20, § 3.18.3.

Unlike the agreement in *Ramos*, the HMA considers post-termination rights that Defendants sought to enforce through their conduct that now gives rise to Plaintiff's Complaint. The mere fact that Defendants' conduct took place after the termination of the HMA is not dispositive.

Rather, the Court must analyze the relationship of the claims in question to the contract containing the forum-selection clause and make a case-specific factual determination, *see Food Mktg.*, 2010 WL 1571206, at *11, which in this case indicate that the scope of the forum-selection clause covers Plaintiff's claims. Defendants' post-termination conduct that gave rise to Plaintiff's Complaint, most evidently Count IV for tortious interference, were purportedly actions taken by Defendants to enforce their rights under the HMA. ECF No. [1] ¶¶ 155-57. To support Plaintiff's allegations of tortious interference, Plaintiff states that Defendants threatened litigation by asserting that Defendants' custom furniture, layout, lighting, paint, and molding must be removed from the Hotel and that they will seek to enforce their rights. ECF No. [1] ¶¶ 140-41; 155-57. These actions were Defendants' attempts to enforce post-termination property rights arising under the HMA. *Id.*; *see also* ECF No. [24-1] at 20, 36, §§ 3.18.3, 9.4. As such, while the Complaint raises non-contractual claims, Defendants' conduct for which Plaintiff seeks relief arises from Defendants' rights covered by the HMA's provisions on post-termination rights.

Furthermore, adjudication of Plaintiff's claims, most evidently Counts V – VI, will require an interpretation of the HMA. In Counts V – VI, Plaintiff asks the Court to declare that Plaintiff's

activities with respect to the operation of the Hotel are not likely to cause confusion with Defendants' alleged trade dress, that Defendants will suffer no damages as a result of Plaintiff's activities, and that Plaintiff's activities with respect to the operation of the Hotel do not constitute unfair competition or infringement of Defendants' rights under the Lanham Act. ECF No. [1] ¶¶ 240-43, 247-49. Adjudication on those claims will necessarily require the Court to consider post-termination rights and stipulations that the parties agreed to in the HMA. For instance, Plaintiff states that the relevant test for trade dress infringement under the Lanham Act, which the Court would have to apply to adjudicate Count V, is whether: (1) the defendant's product is confusingly similar to the plaintiff's product; (2) the similar features are primarily non-functional; and (3) the plaintiff's product is distinctive. ECF No. [29] at 7; *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1322 (11th Cir. 2012). Plaintiff states that the test partly hinges on consumer "confusion," "features that are unique or unusual or well known *by the public*," and "trade dress [that] has secondary meaning *in the minds of the public*." *Id.* at 8 (emphasis in original). In the HMA, however, Plaintiff acknowledges that Defendants' "Design Elements" that are "used in the design and management of the Hotel are distinctive and serve as an indicator that the owner of the [Defendants'] Marks is a source of the Hotel's design and operation." ECF No. [24-1] at 7, § 3.1.2. In the HMA, "[Plaintiff] further acknowledges that Hotel guests and the general public may be confused if the Hotel contained the Design Elements without the ongoing involvement of (i) the owner of the [Defendants'] Marks. . . ." *Id.* Whether Plaintiff is entitled to declaratory relief under the Lanham Act for trade dress infringement, therefore, depends on the interpretation of HMA provisions.

For those reasons, Plaintiff's reliance on *McGregor v. In Tune Music Group*, No. 15-62044-CIV, 2016 WL 8737941, at *9 (S.D. Fla. July 29, 2016) is misplaced. Plaintiff argues that,

14

as in *McGregor*, the forum-selection clause should not be applied because Plaintiff's Complaint does not require an interpretation of the HMA to be resolved. ECF No. [29] at 3. In *McGregor*, the court held that the forum-selection clause did not apply because resolving the plaintiff's copyright claim did not require an interpretation of the agreement that included the forum-selection clause. 2016 WL 8737941, at *9. However, the parties in *McGregor* contracted for one schedule of music ("Schedule A"), and the plaintiff's claims were regarding an entirely different schedule of music ("Schedule B"). *Id.* As such, adjudicating the merits of plaintiff's claims regarding Schedule B did not require an interpretation of the contract regarding Schedule A. *Id.* Here, in contrast, the extent of Defendants' property rights post-termination is discussed in several HMA provisions and is at the crux of Plaintiff's Complaint. The Court finds *Asenov v. Silversea Cruises, Ltd.*, No. 11-62360-CIV, 2012 WL 1136980, at *5 (S.D. Fla. Mar. 28, 2012), to be more persuasive on this issue. In *Asenov*, the defendant argued that a forum-selection clause with the language "under this agreement" covered the plaintiff's non-contractual claims. *Id.* at *3. The court determined that the forum-selection clause covered the non-contractual claims because adjudication of the claims would require consideration of the parties' rights under the agreement in question. *Id.* at *4. Similarly, in this case, the scope of the forum-selection clause covers Plaintiff's claims because adjudication of Plaintiff's claims would require consideration of the post-termination rights under the HMA.

Plaintiff filed a Notice of Supplemental Authority regarding *Moto Capital Group Master Fund Ltd. v. HNA LH OD MZ, LLC, et al.*, Case No. 2021-005367-CA-01, in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "State Case"). ECF No. [36]. One of the Defendants in this case, Manager, is a defendant in the State Case. ECF No. [36-2] at 1. Manager filed a motion to dismiss based on the application of the forum-selection clause and *forum non*

*conveniens* in the State Case. ECF No. [36]. The Eleventh Judicial Circuit denied Manager's motion to dismiss. *Id.* However, the plaintiff in the State Case was Moto, who is *not* a party to the HMA or the DMA, but Plaintiff in the present case is HNA LH OD, LLC, who *is* a party to the HMA. ECF No. [33-2] at 26, § 7.2. There is no indication in the record that Moto is affiliated with Plaintiff. As such, while the Eleventh Judicial Circuit found that Moto is not subject to the forum-selection clause as a non-party to the HMA and DMA, this Court finds that Plaintiff is subject to the forum-selection clause as a party to the HMA.

Finally, even if some claims fall beyond the scope of the HMA's forum-selection clause, this Court has broad discretion in dismissing those claims in the interests of justice. *See Asenov*, 2016 WL 1136980, at *5; *Food Mktg.*, 2010 WL 1571206, at *11 (S.D. Fla. Mar. 26, 2010) ("[E]ven where a forum-selection clause may not require transfer of some claims, a court may, nonetheless, transfer those causes of action to the designated forum along with the contractual claims, in the interest of justice."). In *Asenov*, the court found that even if the court were to dismiss only the claims covered by the forum-selection clause, it would neither promote justice nor be an efficient use of resources to have some of the plaintiff's claims adjudicated in one court and other claims in another. *Id.* Thus, the court in *Asenov* found that all of the claims were subject to the forum-selection clause. *Id.* Similarly, this Court concludes that the scope of the forum-selection clause covers Plaintiff's claims.

**D. Whether the Forum-Selection Clause is Mandatory or Permissive**

After determining that the forum-selection clause is valid and applies to Plaintiff's claims, the Court must assess whether the agreed-upon jurisdiction in the forum-selection clause is mandatory or permissive. *See generally Emerald Grande, Inc.*, 334 F. App'x at 976. The Court of Appeals for the Eleventh Circuit characterizes "forum-selection clauses as either 'permissive' or

'mandatory.'" *Slater*, 643 F.3d at 1330 (citing *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004)). "'A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere,' whereas '[a] mandatory clause . . . "dictates an exclusive forum for litigation under the contract."'" *Id.* (alteration in original) (quoting *Global Satellite Commc'n Co.*, 378 F.3d at 1272). "An action is only subject to dismissal based on a forum-selection clause if the import of the language of the clause as a whole is to provide a particular court or courts with 'exclusive jurisdiction.'" *Wai*, 315 F. Supp. 2d at 1270. Further, the Eleventh Circuit has explained that it "require[s] quite specific language before concluding that a forum-selection clause is mandatory, such that it dictates an exclusive forum for litigation under the contract." *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999).

The forum-selection clause at issue states, "This Agreement *shall* be governed in all respects by the laws of the State of New York. Venue for any action under this Agreement *shall* be in the City and County of New York." ECF No. [24-1] at 41-42, § 11.10 (emphasis added). The clause's "shall" language indicates that jurisdiction is limited to New York State Courts. *Id*. Thus, the plain language of the instant forum-selection clause indicates a mandatory clause.

### E.  *Forum Non Conveniens* Analysis

If a valid, applicable, and mandatory forum-selection clause exists, the Court must conduct a *forum non conveniens* analysis. The existence of a valid forum-selection clause requires a district court to apply the Supreme Court's modified *forum non conveniens* analysis — namely, courts must assess (1) whether an adequate alternative forum is available, and (2) whether the public factors weigh in favor of dismissal. *Atl. Marine Constr. Co.*, 571 U.S. at 63-65; *GDG Acquisitions, LLC*, 749 F.3d at 1028. The Supreme Court has held that the existence of a forum-selection clause is essentially dispositive in the *forum non conveniens* analysis. *See Atl. Marine Constr. Co.*, 571

U.S. at 62; *see also GDG Acquisitions*, 749 F.3d at 1028 ("an enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis).

In the present case, there is an adequate alternative forum. Generally, "[a]n alternative forum is adequate if it provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009). "An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred." *Leon*, 251 F.3d at 1311 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). Here, the parties are already engaged in litigation in New York State Courts over the HMA. ECF No. [1] ¶ 45. Therefore, New York State Courts can assert jurisdiction over the litigation, provide for litigation of the subject matter of the dispute, and offer potential redress for injuries, if any. As a result, there is an adequate alternative forum.

Next, the Court determines that public-interest factors weigh against dismissal.

> The public factors bearing on the question include[] the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co.*, 454 U.S. at 241 n.6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). Dismissing the present case would allow litigation in a forum that is at home with the law that must govern the action, avoid unnecessary problems in the application of foreign law, and prevent the unfairness of burdening citizens in an unrelated forum with jury duty. Therefore, the Court concludes that the modified *forum non conveniens* analysis favors dismissing this action because New York State Courts are an adequate available alternative forum and public-interest factors weigh in favor of this preselected forum.

Given this Court's conclusion that there is a valid, applicable, and mandatory forum-selection clause and that Plaintiff's claims fall within its scope, the Court finds that dismissal without prejudice is required.[5] The Court, therefore, declines to resolve the remaining issues presented in Defendants' Motion.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss and Strike Plaintiff's Complaint with Prejudice, **ECF No. [24]**, is **GRANTED IN PART AND DENIED IN PART**.

2. To the extent not otherwise disposed of, any pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

3. The Clerk of Court is directed to **CLOSE** the above-styled case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 29, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[5] No federal statute empowers a district court to transfer a civil action originally filed in federal court to a state court. As such, a dismissal, not a transfer, is appropriate in the present case.